IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**DAVID BAITY,**

    **Petitioner,**

**vs.**                                                   **CASE NO. 4:03cv356-WS/WCS**

**JAMES CROSBY,**[1]

    **Respondent.**

_____/


## REPORT AND RECOMMENDATION

    This is an amended petition for writ of habeas corpus filed by David Baity pursuant to 28 U.S.C. § 2254. Doc. 8. Petitioner challenges his conviction for first degree murder in the Circuit Court of the Judicial Circuit, in and for Leon County, Florida, case number 95-2254. Respondent filed an answer and the record below.[2] Doc. 21. Petitioner has not filed a traverse.

---

    [1] The style of this case has shown the Florida Department of Corrections as Respondent. The Respondent for a § 2254 petition should be the Secretary of that Department, James Crosby. The style is amended accordingly.

    [2] A partial record was filed with the limited answer. Doc. 12.

Respondent initially filed a limited answer, arguing that the petition was untimely. Doc. 11.  The arguments were found to unpersuasive, the petition was found to be timely, and Respondent was ordered to file an answer on the merits.  Doc. 13.  That order, doc. 11, is incorporated herein by reference.  If Respondent wishes to present the timeliness issue to the district judge, Respondent may do so in objections to this report and recommendation.

State court remedies have been exhausted as to all of the claims presented to this court.  Thus, this report and recommendation addresses the merits of each claim, constrained by the law governing such review.

**Procedural History**

On June 23, 1996, Petitioner was convicted after a guilty plea to first degree murder, and he was sentenced to life imprisonment without parole or any other form of early release.  Petitioner filed a notice of appeal, but then asked the appellate court to relinquish jurisdiction to allow the trial court to consider his motion to withdraw his guilty plea and that motion was granted.  The appeal was eventually dismissed for failure to file a status report.  Doc. 21, Ex. F.

Petitioner filed a Rule 3.850 motion on June 5, 1998, raising the same seven grounds raised in this § 2254 petition.  Doc. 1, Ex. A, pp. 1-27.  The court denied appointment of counsel and held an evidentiary hearing with Petitioner proceeding pro se.  *Id.*, p. 37-123.  The Rule 3.850 motion was denied.  *Id.*, pp. 124-130.

On appeal, denial of the motion was reversed and the case remanded for appointment of counsel and another evidentiary hearing.  *Id.*, Ex. H.  After a second evidentiary hearing, the motion was again denied.  *Id.*, Ex. A, pp. 299-304 (order) and

306-472 (transcript of second hearing).  An appeal was taken and the order was affirmed.  *Id.*, Ex. I.

**Section 2254 Standard of Review**

For claims which were properly exhausted and adjudicated in state court, this court's review is limited.  "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted).  Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record."  Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495,

1519-1520, 146 L.Ed.2d 389 (2000) [3]; Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).  "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court precedent.  Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

The law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all

---

[3] This was Justice O'Connor's opinion for the Court in Part II; the rest of the opinion for the Court (Parts I, III, and IV) was by Justice Stevens.

significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  Petitioner has a heavy burden to establish the deficient performance prong of Strickland, by showing that "no competent counsel would have taken the action that his counsel did take."  Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  There are no rigid requirements, or absolute duty to investigate a particular line of defense.  Id.

> Indeed, "[c]onsidering the realities of the courtroom, more is not always better.  Stacking defenses can hurt a case.  Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

261 F.3d at 121 (citations omitted).

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.  In the context of a guilty plea, the first part of the Strickland test is the same, but "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Jackson v. United States, 976 F.2d 679, 681 (11th Cir. 1992), citing United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986).

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."

466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

If the state court identifies and applies the framework of Strickland in assessing an ineffective assistance claim, its adjudication does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently.  Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852.  To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams).  "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Grounds one, two, and three[4]**

Ground One alleges that counsel was ineffective in failing to explain to Petitioner that the State had to prove that he had the specific intent to commit premeditated murder.  Petitioner argues that this failure rendered his guilty plea involuntary.  Ground Two alleges the same claim, except that it is alleged that the guilty plea was involuntary

---

[4] The handwritten attachment to document 8 is sometimes difficult to read.  It is an identical copy, however, of the Rule 3.850 motion which is in this record.  Doc. 21, Ex. A, R. 1-27.  Where there is difficulty reading the § 2254 petition, the court has looked to the Rule 3.850 motion for clarification.

Case No. 4:03cv356-RH/WCS

because counsel did not investigate and pursue the defense of a lack of specific intent.[5] Petitioner states that he told his attorney he did not intend to kill the victim.  Doc. 8, attachment.  Ground Three alleges that the defense to a lack of specific intent was voluntary intoxication, which counsel allegedly failed to investigate and present, thereby rendering the plea involuntary.  Petitioner contends that "he had consumed large quantities of alcohol and cocaine moments before the crime took place and as a result, he was extremely intoxicated at the time of the offense."  He contends that his attorney misled him by advising him that he had no defenses available.  Doc. 8, attachment.

These claims were considered interrelated by the circuit court, dealing with voluntary intoxication as a defense.  Doc. 21, Ex. A, R. 299.  The court found:

> Defendant first claims that counsel was ineffective for failing to advise, investigate and present the defense of voluntary intoxication.  Trial counsel, Mr. Sheffield, again testified that he had considered such a defense but upon further investigation, decided that the defense of voluntary intoxication could not be proven.  Mr. Sheffield testified that he came to this determination based on the facts of the case, Mr. Baity's statements to the law enforcement officers, and Mr. Baity's insistence that he was innocent of the crime.  Counsel further testified that he and the investigator, Danny Johnson, had discussions with family members but there was never anybody to corroborate that the Defendant and co-defendant had been drinking to the extent that they were intoxicated.  Hrg. Trans Pgs. 107-128.  Counsel was also asked whether he had inquired when deposing the co-defendant, Aaron Moore, whether or not the two were drinking on the day of the murder.  Counsel testified that he could not specifically recall without reading the transcript, but that he was sure he probably did.  Transcripts of the evidentiary held on November 19, 1999 evidence counsel testifying Aaron Moore did not corroborate

---

[5] Ground Two on page 4 of the amended petition concerns an alleged failure to investigate Petitioner's incompetence as a defense.  However, the attachment states that Ground Two is ineffective assistance of counsel in failing to present a defense of lack of specific intent to commit premeditated murder, thus rendering the guilty plea involuntary.  The latter claim will be considered here.  The issues regarding competency are adjudicated as to Grounds Five, Six, and Seven.

> intoxication at the time of the offense. Hrg. Trans.1. Pg. 45. Additionally, Dr. Harry McClaren, the defense psychological expert, testified that based on the conversations he had with the Defendant, the defense of voluntary intoxication did not come to mind. "I don't remember thinking about that as a possible defense based on what he was telling me, unlike many people that I examine that tell me that they were either drinking or using drugs heavily at the time, as that being a main theme." Hrg. Trans. Pg. 91. Dr. McClaren also testified that he could not recollect and it was not reflected in his notes that Defendant told him he was drinking heavily before the murder. Hrg. Trans. Pg. 91-93. Accordingly, based on the aforementioned reasons cited by Mr. Sheffield at the evidentiary hearing for rejecting the voluntary intoxication defense, counsel's decision not to pursue a voluntary defense was reasonable, tactical, strategic decision. There was no viable voluntary intoxication defense that the Defendant should have been informed of.

Doc. 21, Ex. A, R. 300-301.[6]

Petitioner has not rebutted the presumption of correctness of these factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Further, the circuit court's findings of fact are supported by the record. Dr. McClaren, who examined Petitioner for determining his competency, testified that he had no recollection of Petitioner telling him that he was "drinking heavily" on the day of the murder, and he did not recall this being "a main theme." Doc. 21, Ex. A, R. 226.[7] Intoxication on the day of the crime was not reflected in his notes. *Id.*, R. 228. McClaren did say, however, that he was told that Aaron Moore, the co-defendant, always had a "lot of liquor." *Id.*, R. 227.

---

[6] Citations are to the pages of the record unless otherwise noted.

[7] As noted above, there were two Rule 3.850 evidentiary hearings. The first began on November 19, 1999, and the second began on June 12, 2001. Doc. 21, Ex. A, R. 52-123, 136-287. Most of the citations in this report and recommendation are to the second evidentiary hearing.

Frank Sheffield, Petitioner's trial attorney, testified that he "sent Danny Johnson [Sheffield's private investigator] out to talk to all of [Petitioner's] relatives and all of the people he named to determine whether or not, in fact, he was intoxicated to the extent that he could not have formed the requisite intent to commit murder in the first degree, and I couldn't find anybody that would support that." *Id.*, R. 248.

Sheffield said that the State was "actively seeking the death penalty." *Id.*, R. 244. He testified that co-defendant Aaron Moore entered a guilty plea to avoid the death penalty, and was going to testify against Petitioner. *Id.*, R. 244-246. Additionally, Petitioner had confessed and Sheffield had been unsuccessful in suppressing the confession. *Id.* Sheffield said that Petitioner faced only two possible sentences, life without parole or death, and he felt that a death sentence was more likely. *Id.*, R. 249. A part of his problem in defending Petitioner against the death penalty was that the State had evidence that Petitioner had had sexual intercourse with the victim's corpse. *Id.*, R. 247.

Sheffield explained that there was more than enough evidence to show premeditation. There was evidence that Petitioner went over to Aaron Moore's[8] house and he and Moore discussed killing Moore's mother. *Id.*, R. 248. Petitioner was going to get a gun so that Moore could "do it." *Id.* There was evidence that they planned "how we [are] going to take care of this." He said that the evidence would show that the two defendants had the following discussions about killing Aaron Moore's mother:

> Well, you hide in a closet and when she comes in I'll bring her back and tell her we got a surprise for her. I'll bring her back, and when she comes

---

[8] The name is spelled Erin in the transcript at this point.

> back, you jump out of the closet and we'll kill her.  And they planned that out in advance, and that's exactly what happened.  When [Aaron's] mother comes in, he says, I got a surprise for you, puts his hand over her eyes, takes her back into the room.  David [Baity] jumps out of the closet.  They start choking her.  She's not dying.
>
> Aaron goes out of the room and leaves David, gets an extension cord, brings it in and puts it around her throat.  She's still not dying.  They fall down in a heap on the floor, which time David picks up a ten-pound barbell and hits her in the head with it.
>
> So I had absolutely no question but that [Petitioner] knew what he was doing, and I was satisfied that I could not present an intoxication defense in this case.  Plus the fact that to do that, I would have to say, well, he did it but he didn't know what he was doing because he was intoxicated, and up to the very minute that he pled, he was insistent that he was not guilty and that he was not admitting he did anything.

R. 248-249.  *See also Id.* R. 311-318 (summary of the evidence which would be presented at trial, stated by the prosecutor at the time of the guilty plea).

In summary, while the circuit's findings do not discuss whether Petitioner's attorney explained to Petitioner that he had to have had the specific intent to commit first degree murder, even if he did not, prejudice to the outcome has not been shown. The evidence of premeditation was overwhelming.  The one defense available to vitiate the element of specific intent, voluntary intoxication, was thoroughly explored by Petitioner's trial attorney and found to be without any foundation in fact.  Further, it was contrary to Defendant's insistence that he did not want to enter a plea.  *Id.* R. 249-251 (counsel's testimony that up until the Sunday when Petitioner entered his plea, counsel was told there would not be a plea and he was preparing for trial).

Thus, the state court's adjudication of the merits of the federal claims in grounds one, two, and three has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." § 2254(d)(1). Grounds one, two and three afford no relief.

**Ground Four**[9]

Petitioner contends that his attorney was ineffective because he did not explain to him the difference between a life sentence, with the possibility of release, and a natural life sentence, without any possibility of release. Petitioner also asserts that he was misled by his attorney, who told him he would receive a sentence of between 15 and 40 years. He contends he thought that he would get a sentence like his co-defendant, Aaron Moore, who entered a guilty plea to second degree murder and received a life sentence rather than a natural life sentence.

As to this claim, the trial court found that attorney Sheffield adamantly denied telling Petitioner that he would receive a sentence of between 15 to 40 years, and testified that Petitioner was told and understood that if he entered a guilty plea, he would be sentenced to life in prison without parole. Doc. 21, Ex. A, R. 302. The court found that Mr. Sheffield explained every section of the plea agreement to Petitioner, and had no doubt that Petitioner understood exactly what was going to happen. *Id.* The court also found that at the plea colloquy, Petitioner was told that he would receive a life sentence without parole and in exchange, the State would not seek the death penalty. *Id.*, R. 303. The court concluded:

---

[9] Ground Four on page 5 of the petition concerns a competency hearing. However, Ground Four in the attachment concerns the type of life sentence. The latter claim will be considered here. The issues regarding competency are discussed as to Grounds Five, Six, and Seven.

> All of the evidence introduced at the hearing leads this Court to conclude that the Defendant received exceptional legal representation in a very difficult and unpopular case and that he knowingly and voluntarily entered the plea to life without parole, fully understanding the consequences of that sentence, in order to avoid the death penalty.

*Id.*, R. 303-304.

Petitioner has not come forward with evidence to rebut the presumption that these findings of fact are correct. The findings are supported by the record. Sheffield said that he made it "very clear" to Petitioner that the only plea offer "on the table" was life imprisonment without parole. *Id.*, R. 251. Sheffield said that he became aware that Petitioner asserted that he had promised Petitioner that he would get out in 15 years, and Sheffield said that was "absolutely false." R. 254. Sheffield said that he went through the plea agreement with Petitioner, that the plea agreement stated that the sentence would be "life WOP," which meant without parole, and Sheffield said that there was "[n]o question in my mind that he understood exactly what was happening." *Id.*, R. 252-253. The transcript of the plea colloquy is not before this court, but Petitioner has not disputed the trial court's findings that he was informed during that colloquy that he would be sentenced to life in prison without parole. Accordingly, the state court's adjudication of the merits of the federal claims in grounds one, two, and three has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Grounds Five, Six, and Seven**

Petitioner contends in Ground Five that his trial attorney was ineffective for failing to present evidence of his mental health in mitigation at sentencing. Petitioner contends

in Ground Six that his attorney was ineffective for failing to present the defense of incompetency as to the offense, or to argue his incompetency to enter a guilty plea. Ground Seven alleges ineffective assistance of counsel for failing to move for a competency hearing. Petitioner contends he was given a competency examination pursuant to Fla.R.Crim.P. 3.210(a) by a court appointed psychologist, Harry A. McClaren, Ph.D., and he asserts that he "failed" the examination. He argues that it was a violation of state law not to have held a competency hearing after Dr. McClaren rendered his report.

> The trial court's findings of fact reject this claim, finding:
>
> Dr. McClaren again testified that he met with the Defendant on five different occasions and concluded that he was sane at the time of the offense and was competent to stand trial. Hrg. Trans. Pgs. 67-69, & 93. See also Hrg. Trans. 1. Pgs. 61&62. It should again be noted that both Mr. Sheffield and Dr. McClaren were prepared to present evidence gained through Dr. McClaren's examinations of the defendant during the penalty phase of the trial. Mr. Sheffield also testified that he and Dr. McClaren had discussed the Defendant's background and determined that he was in the slow range, but that he was indeed competent. "And I never had any time that I believe that he didn't understand exactly what was going on." Hrg. Trans. Pg. 121. Therefore counsel did investigate the issue of Defendant's competency and with the assistance and evaluation of the Defendant by Dr. McClaren, determined the defendant was indeed competent and thus foreclosed any incompetency argument.

Doc. 21, Ex. A, R. 301.

Dr. McClaren said he met with Petitioner five times and determined that Petitioner was competent to proceed to trial. *Id.*, R. 202-204, 230. Dr. McClaren testified in the first Rule 3.850 evidentiary hearing that he concluded that "there was no basis for an adjudication of insanity" at the time of the offense. *Id.*, first hearing transcript, R. 112-113. Dr. McClaren also asked Petitioner several times to relate what

happened during the commission of the offense, and Dr. McClaren said that he did not recall Petitioner having any problems in relating those facts because his memory "was clouded by something." *Id.*, second hearing transcript, R. 231.  Petitioner has not presented any evidence that he "failed" the competency examination, or that he was incompetent or insane at the time of the offense.   Consequently, the state court's adjudication of the merits of the federal claims in grounds one, two, and three has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

Accordingly, it is **RECOMMENDED** that the amended petition for writ of habeas corpus filed by David Baity pursuant to 28 U.S.C. § 2254, challenging his conviction for first degree murder in the Circuit Court of the Judicial Circuit, in and for Leon County, Florida, case number 95-2254, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on June 17, 2005.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 4:03cv356-RH/WCS